MICHAEL A. DiNARDO (#216991)
mdinardo@yklaw.us
AARON T. BORROWMAN (#201620)
aborrowman@yklaw.us
YK LAW, LLP
445 S. Figueroa St, Suite 2280
Los Angeles, CA, 90071
Office: 213-401-0970

Attorneys for Plaintiff SUZHOU
LINKDOME TECHNOLOGY LTD

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZHOU LINKDOME TECHNOLOGY LTD., a China limited liability company<br><br>Plaintiff,<br><br>v.<br><br>KAMI VISION, INC., a Delaware corporation, and SEAN DA, an individual,<br><br>Defendant. | CASE NO. 5:24-CV-8427<br><br>COMPLAINT FOR COPYRIGHT INFRINGEMENT AND RELATED CAUSES OF ACTION<br><br>DEMAND FOR JURY TRIAL |

For its Complaint, Suzhou Linkdome Technology Ltd. ("Plaintiff" or "Linkdome"), by and through its undersigned counsel of record, asserts the following for its Complaint and Jury Demand against Defendants Kami Vision, Inc. ("KV") and Sean Da ("Da", collectively with KV, "Defendants"). All allegations are made upon information and belief unless otherwise stated. Plaintiff's investigation of the events at issue is ongoing; Plaintiff reserves all of its rights to amend, supplement, and/or withdraw allegations as necessary or otherwise appropriate.

## PARTIES

1.      Plaintiff Suzhou Linkdome Technology Ltd. is a limited liability company organized under the laws of China and is located at Room 306, Building 2, 45 Dongwang Road, Suzhou Industrial Park, Suzhou, Jiangsu, China.

2.      Defendant Kami Vision, Inc. is a corporation organized under the laws of Delware, and has a principal place of business at 2680 N 1st Street, Ste 200, San Jose, California.

3.      Defendant Sean Da is the Chief Executive Officer of Defendant Kami Vision, Inc. On information and belief, Defendant Da is the principal officer of Defendant Kami Vision, Inc., responsible for approving the manufacture, distribution, and/or maintenance of the subject products, and directly engaged in the fraudulent and inducing activities alleged herein from Defendant Kami Vision, Inc.'s principal place of business in San Jose, CA. On information and belief, Defendant Da resides in or near San Jose, CA within this Court's judicial district.

4.      Defendant Da knew, or should have known, the manufacture, distribution, and/or maintenance of the subject products would constitute an infringement of Plaintiff's copyrights, and certainly knew after being placed on actual notice of the copyrights when informed by Plaintiff that Defendant Kami Vision, Inc. was infringing Plaintiff's copyrights. Defendant Da knew, or should have known, that the fraudulent and inducing actions would cause harm to Plaintiff. Yet, Defendant Da has chosen to

continue to orchestrate the distribution of the subject products and maintain the fraudulent and inducing conduct. As a consequence, Defendant Da has and is actively and knowingly aiding and abetting the infringing, fraudulent, and inducing conduct, resulting in personal liability attaching to Defendant Da for the infringement and other claims.

## NATURE OF THE ACTION

5.     This is a copyright action and related contract and business tort claims. Plaintiff brings this action to recover millions of dollars owed by Defendants for infringement, breach of contract, fraud, interference and other related business torts.  On information and belief, Defendants owe these amounts based on their fraudulent acquisition and unauthorized use of Plaintiff's copyrighted software programs, and their failure to otherwise perform the assumed contractual obligations owed to Plaintiff, inflicting subsequent harm.

6.     Defendants have engaged in a scheme to, among others, influence Plaintiff and others into doing business with Defendants, and to hinder Plaintiff's lawful business operations with third-parties and otherwise induce Plaintiff to terminate existing contractual relationships with customers and other third-parties based on Defendants' fraudulent inducements.  Thereafter, the Defendants engaged in a series of sham transactions designed to acquire and use Plaintiff's copyrighted software programs in Defendants' camera products and related computer platforms, while fraudulently assuming de facto control over Plaintiff's copyrighted software programs.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338 because the copyright claims involve a federal question arising under the Copyright Act, 17 U.S.C. §101 et seq.  This Court also has jurisdiction over the other claims pursuant to 28 U.S.C. §1367 because the other claims are so related to copyright claims that they form part of the same case or controversy.

8.      This Court has personal jurisdiction over Defendant KV because it is registered to do business in California and has a business address in this district.  This Court has personal jurisdiction over Defendant Da because he is a resident of California and this district.

9.      Venue is proper in this Court, as provided by 28 U.S.C. §§1391(b)(1) and 1400(a), because Defendant KV resides and has an agent in this Court's judicial district and Defendant Da resides in this Court's judicial district.

## STATEMENT OF FACTS

10.      Plaintiff Linkdome is a technology company located in Jiangsu, China that develops, distributes, and maintains computer software and related platforms that utilize artificial intelligence computer programs and related technology for various purposes, including to monitor audio and video feeds.

11.      Plaintiff acted to protect its copyrights in the computer programs by registering copyrights, which are the subject of this Complaint:

     a.      Plaintiff registered its copyright to the Edge AI Camera Software Program with the United States Copyright Office. This copyright was registered as TX 9-436-993 with an effective date of registration of September 27, 2024. (the "Edge AI Copyright") Attached as Exhibit A is a copy of the Certificate of Registration for the Edge AI Copyright.

     b.      Plaintiff registered its copyright to the Teralink AI Platform Software Program with the United States Copyright Office. This copyright was registered as TX 9-436-666 with an effective date of registration of September 27, 2024. (the "Teralink AI Copyright") Attached as Exhibit B is a copy of the Certificate of Registration for the Teralink AI Copyright.

12. Each of Plaintiff's Copyrighted Computer Programs listed above (collectively the "AI Computer Programs") contains new and original computer source code, combined with pre-existing source code from third-parties under license or other authorized use, fixed in a tangible medium. Plaintiff owns all rights, title, and interest to the new and original computer source code in the Copyrighted Computer Programs.

13. On information and belief, Defendant KV is a technology company located in San Jose, California that develops, distributes, and maintains surveillance equipment, including but not limited to audio and video cameras for monitoring retail, healthcare, and elder care facilities, that utilize artificial intelligence computer programs both directly in camera equipment and on internet-based computer servers.

## BACKGROUND

14. In 2019, Plaintiff was founded by Jinjun Wang with operations based in China. Plaintiff was started with the purpose of providing computer vision and AI services for retail customers on both server and camera-based systems. In connection with its business, Plaintiff developed multiple unique software programs, including the AI Computer Programs.

15. Over the years, Plaintiff's business grew and generated multiple business contracts and client contracts utilizing the software programs developed therein, including the AI Computer Programs.

16. In or about the second half of 2023, Plaintiff became aware that Defendant KV was exploring new opportunities for business development, including products based on technology similar to the AI Computer Programs. To that end, agents of Plaintiff met with principals of Defendant KV, including Defendant Da.

17. In a meeting in November 2023, Plaintiff's representative – Rohan Sanil – met with Defendant Da to discuss Plaintiff's business. Sanil described the background of Plaintiff's principal – Jinjun Wang – and certain specifics of Plaintiff's operations to Defendant Da. At that meeting Defendant Da expressed to Sanil significant interest in

Plaintiff's technology, saying "We have a lot of cash, we can buy Linkdome", and "We are cashflow positive, we can acquire Linkdome.".

18.   In December 2023 Sanil relayed Defendant Da's expressions of interest to Plaintiff.  Plaintiff communicated its willingness to further discuss the acquisition.

**Discussions for Acquisition of Plaintiff by Defendants**

19.   In January 2024, Defendant Da communicated a plan to launch a new business line within Defendant KV based on Plaintiff's original business technology, targeting business-to-business (B2B) and enterprise clients.  Defendant Da invited Sanil to join Defendant KV and expressed a desire for Jinjun Wang to also join Defendant KV and relocate to the US.

20.   On January 5, 2024, Plaintiff and Defendant KV began exchanging correspondence regarding the acquisition of Plaintiff by Defendant KV.  Defendant Da, as the CEO of Defendant KV, was involved in every discussion of the potential acquisition of Plaintiff.  Defendant KV and Defendant Da offered to buy Plaintiff for US$5.5M on the premise that Plaintiff's technology would form the base for Defendant KV's business with enterprise clients.

21.   During negotiations for the acquisition of Plaintiff, Defendant Da suggested that Plaintiff allow Defendants to use the AI Computer Programs in its commercial products so that business would not be interrupted and could be developed during negotiations and underlying due diligence investigations.

22.   Based on representations by Defendant Da, Jinjun Wang officially joined Defendant KV in the United States on January 16, 2024 in the role of VP, Engineering AI.  In this role, his duties focused on the enterprise security part of camera vision and AI offerings – all as part of the acquisition of Plaintiff by Defendant KV.

23.   After Jinjun Wang joined Defendant KV, the parties continued legal discussions related to the acquisition of Plaintiff by Defendant KV. These discussions

were primarily between Plaintiff, Defendant Da, Defendant KV's COO Michael Adair, and lawyers for Defendant KV.

24.    Between January 17, 2024 and January 26, 2024, representatives of Plaintiff, including Junjun Wang and Rohan Sanil, and representatives of Defendant KV, including Defendant Da and COO Michael Adair, exchanged emails and paperwork regarding due diligence efforts related to the acquisition of Plaintiff by Defendant KV.  In these communications, Defendant Da described the transaction as a "win win MA" – "MA" describing a merger and acquisition.

25.    On or about January 18, 2024, the parties exchanged a written letter proposal for Defendant KV to purchase the assets of Plaintiff.  As detailed below, the letter proposal was never signed, yet Defendant insisted and Plaintiff performed as if the letter proposal had been signed.

26.    On February 20, 2024, Plaintiff followed-up with Defendant KV regarding the status of the acquisition talks and due diligence.  On February 21, 2024, Defendant KV, through Michael Adair, responded that lawyers were still reviewing materials to "confirm everything."

27.    On March 5, 2024, Jinjun Wang met Defendant Da in person in the San Jose office of Defendant KV.  Defendant Da told Jinjun Wang that he wanted to move away from use of the term from "acquisition" to "asset sale", so as to avoid any potential negative publicity about a US company purchasing assets from a Chinese company.

28.    Also on March 5, 2024, Defendant Da expressed an unwillingness to sign anything in writing also because of his concern about a deal involving a US company acquiring a Chinese company, particularly involving AI technology.  Defendant Da asked that Jinjun Wang take him at his word.  No one else was present at this meeting.

29.    Plaintiff is informed and believes that Defendant Da was planning public securities transactions with Defendant KV and didn't want any hint of a connection to a Chinese company to avoid any potential negative publicity.

30.    From May 24, 2024 through June 9, 2024, Jinjun Wang and Defendant Da were in discussions regarding a payment schedule for US$5.5M on the asset purchase. Unknown to Plaintiff and Jinjun Wang at the time, after June 2024, Defendant KV and Defendant Da would take no further actions in furtherance of the acquisition.

## **Plaintiff Stock Buy-Back, Negotiations, and Loan**

31.    In furtherance of the acquisition being negotiated, in early-March 2024, Defendant Da requested that Jinjun Wang go to China to negotiate a buy-back of the interests of an investor in Plaintiff so that Jinjun Wang had the sole decision-making authority on behalf of Plaintiff.

32.    From March 8, 2024 to March 27, 2024, Jinjun Wang was in China to negotiate the buy-back of shares of Plaintiff from the investor.  Jinjun Wang negotiated a deal of RMB 2.8M to buy back the shares in Plaintiff owned by the investor.  Jinjun Wang communicated the deal to Defendant Da who authorized the deal and agreed to pay the investor in a matter of weeks.  Following this communication, Defendant Da did not take any subsequent actions toward the payment or a loan for the repurchase of shares.

33.    Between March 27, 2024 and May 18, 2024, the investor in Plaintiff spent time auditing Plaintiff's books to confirm the valuation of the stock buyback.  Since the investor in Plaintiff only allowed for 30-days from May 18 to make the payment and Defendant Da did not follow through on payment despite his authorization, Jinjun Wang had to make other arrangements for payment to the investor.  Jinjun Wang expended substantial time and effort to finalize a loan for the stock buy-back.

34.    As an alternative to Defendant KV paying for the buy-back directly, Jinjun Wang took a loan from Defendant KV's Shanghai wholly-owned subsidiary so that he could pay Plaintiff's investor, ultimately receiving the loan on June 17, 2024 – two-days after the investor's deadline.

35.    In the days leading up to and at the time of finalizing the loan, Jinjun Wang was told by an accounting employee of Defendant KV's Shanghai wholly-owned subsidiary that Defendant Da had told her "the acquisition agreement will get signed simultaneously" with the buy-back loan.  As stated above, Defendant Da never got back to Jinjun Wang regarding the acquisition after the buy-back loan.

36.    Jinjun Wang believes that the suggested simultaneous execution of the loan and acquisition agreements was a misrepresentation by <u>Defendant</u> Da designed to induce Plaintiff into taking the loan and buying back the stock from the investor, so that Jinjun Wang would be the sole person to authorize the transfer of AI Computer Programs.

**Transfer of Plaintiff Employees and Software**

37.    On March 18, 2024, all of Plaintiff's employees in China resigned and joined Defendant KV in China, as required by Defendant KV.  The former employees of Plaintiff were then put onto the development and launch of camera products for Defendant KV – named Orion and Sapphire – at the ISC West tradeshow from March 31 to April 4, 2024.

38.    On April 15, 2024, Michael Adair sent an email to Plaintiff and Jinjun Wang – after inquiring about sending requested camera equipment – stating that "[w]e will likely start moving forward with some diligence soon."

-    **KV Orion and Sapphire Products**

39.    The Orion and Sapphire camera products were basically re-brandings of Plaintiff's existing AI camera products.  The Orion and Sapphire camera products run the Edge AI Camera Software Program.  The Orion camera extracts business metrics from camera feeds in retail settings to provide business intelligence for retail customers.  The Sapphire camera provides enterprise security, including human detection, vehicle detection, and license plate detection.

40.     Since April 4, 2024, the former employees of Plaintiff were put onto the development and launch of new products for Defendant KV – the KamiCare and Kami 2.0 products. The Teralink AI Platform Software Program is server-side software used by Defendant KV to build its cloud AI platform to support the KamiCare and Kami 2.0 products.

41.     KamiCare is an existing Defendant KV product to detect falls, i.e., human detection, in elder care settings.  The addition of Plaintiff's Teralink AI Platform Software Program vastly improved the operation of KamiCare.

42.     Kami 2.0 is using latest AI technology to summarize content of home user video sequences.   The addition of Plaintiff's Teralink AI Platform Software Program vastly improved the operation of Kami 2.0.

43.     In or about April 2024, Defendant KV started using Plaintiff's AI Computer Software in commercial products, including the Orion and Sapphire camera products launched at the ISC West show.  The Orion camera product is simply a re-branding of the Edge AI camera from Plaintiff, without any changes to the hardware or software from the original product.  The Sapphire camera product is for enterprise security and is largely based on the Edge AI camera product from Plaintiff.

-     **KV KamiCare Product**

44.     On May 29, 2024, the Teralink AI Platform Software Program was deployed and used on the server in Defendant KV's San Jose office for the KamiCare product.

45.     From June 1, 2024 to June 11, 2024, the team conducted a test on the Teralink AI Platform Software Program system deployed through the KamiCare product and issued a test report.

46.     On June 28, 2024, the KamiCare product incorporated a monitoring restart mechanism in the Teralink AI Platform Software Program, following which the task monitoring personnel would send an AI Cloud Filter Status email every day, ensuring continuous oversight and prompt response to any issues.

- **KV Kami 2.0 Product**

47.    On June 20, 2024, the Teralink AI Platform Software Program was deployed and used on the A100 server in China for Defendant KV's Kami2.0 product.

48.    On July 2, 2024, the entire system of the Teralink AI Platform Software Program and its add-on task function were used in the Kami2.0 product.

49.    From May 2024 through September 2024 (and continuing), the Teralink AI Platform Software Program from Plaintiff was used in the KamiCare and Kami 2.0 products of Defendant KV to process video tasks in parallel and on a large scale.

**Defendants' Efforts to Hinder Development and Acquisition**

50.    As subsequently realized by Plaintiff, starting in May 2024, Defendant Da began to take actions to slow down the progress of the Orion and Sapphire camera products.  For example, he tasked Jinjun Wang and other former employees of Plaintiff to work on other products like the KamiCare and Kami 2.0 projects instead.  Such actions stopped almost all development on the Orion and Sapphire camera products.  Such efforts by Defendant Da continued for at least several months.

51.    In August 2024, Defendant Da again changed direction, tasking Plaintiff's former employees with developing the YI camera product for a new company named AMC to sell the cameras on Amazon.  Plaintiff is informed and believes that Defendant Da planned to take the AMC business to initial public offering (IPO).  Defendant Da and AMC company claims that the YI camera uses the Edge AI Software Program.  Plaintiff is informed and believes that the claimed use of the Edge AI Software Program is false, with the YI camera actually using a team of humans reviewing the camera feed to perform behavior analysis as opposed to any AI software.

52.    Defendant Da forced several of Plaintiff's former employees to switch their employment from Defendant KV to AMC for development of this YI camera product.  Before such employees agreed, their names were already listed as part of the leadership

team of AMC.  Through AMC, Defendant Da made false claims that the YI camera products used the Edge AI Software Program and had other features that were not true.

53.    Further to the efforts of Defendant Da to slow down the progress of the Orion and Sapphire camera products, Defendant Da refused to pay vendors that designed and manufactured the Orion and Sapphire camera products, even though the work had already been done.  Despite this, the Orion and Sapphire camera products are already contained in the sales materials and office decorations of Defendant KV's Shanghai wholly-owned subsidiary.

54.    Jinjun Wang and other former employees of Plaintiff also saw serious delays in the payment to a joint research program with a Chinese university related to the Kami 2.0 product, the refusal to make payment to the data labeling team, and the delay in payment to an internet provider leading to internet access necessary for operation of the various server based camera products being down for an entire week

55.    Plaintiff is informed and believes that these efforts by Defendant Da were a means for Defendant Da to sabotage the Orion and Sapphire camera products to justify not completing the acquisition and/or asset purchase, despite already having possession of Plaintiff's AI Computer Programs.

## Official Complaints and Plaintiff's Termination

56.    On August 10, 2024, Jinjun Wang sent an email to Defendant KV – to its COO Michael Adair – reporting complaints about cancellation of Q2 company bonuses to employees, particularly the former employees of Plaintiff that moved over to Defendant KV, as well as Jinjun Wang, the fact that acquisition of Plaintiff had still not been completed despite Plaintiff providing the AI Computer Programs and related know-how, and Jinjun Wang taking a loan from Defendant KV's Shanghai wholly-owned subsidiary to buyout Plaintiff's investor.

57.    On August 15, 2024, Jinjun Wang asked Defendant Da about payment of his sign-on bonus, with Defendant Da Stating that "the new HR will join on September 2, 2024 and [Defendant KV] will take care of those issues." This statement turned out to be false.

58.    Jinjun Wang did not receive his sign-on bonus on September 2, 2024 as promised, or at any time thereafter.

59.    The former employees of Plaintiff were terminated from their employment with Defendant KV on September 4, 2024.

60.    Jinjun Wang's employment with Defendant KV was terminated on September 6, 2024.

61.    Jinjun Wang is also owed unreimbursed expenses of about $5,000 on behalf of Defendant KV.

62.    Plaintiff is informed and believes that after Defendant KV terminated the employment of the former employees of Plaintiff and Jinjun Wang, Defendant KV continued using the Teralink AI Platform Software Program for the KamiCare and Kami 2.0 products, as well as the Edge AI Software Program for the Orion and Sapphire camera products. Plaintiff is informed of these facts by Nate Angara, VP of Infrastructure at Defendant KV.

63.    Plaintiff is informed and believes that Defendant Da subsequently requested Nate Angara to repair damage to nodes in the Teralink AI Platform Software Program. Defendant Da then asked the team in Defendant KV's Shanghai wholly-owned subsidiary to make repairs, but they were not trained on the software before the former employees of Plaintiff were terminated.

64.    Plaintiff is informed and believes that the team in Defendant KV's Shanghai wholly-owned subsidiary has attempted to contact the former employees of Plaintiff regarding the requested repairs, without success. Plaintiff is further informed and

believes that team in Defendant KV's Shanghai wholly-owned subsidiary attempted to reverse engineer the Teralink AI Platform Software Program, also without success.

65.    Defendants have profited and continue to profit from their unauthorized and infringing use of Plaintiff's AI Computer Programs by manufacturing, distributing, and maintaining audio and video camera equipment, with related computer servers (the "Accused Instrumentalities") as described herein.

## COUNT I – COPYRIGHT INFRINGEMENT
### (Reg. No. TX 9-436-993 - Edge AI Camera software program)
### (17 U.S.C. §101 et. seq.)

66.    Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

67.    Plaintiff is the owner of the right, title, and interest in the Edge AI Copyright registered as Reg. No. TX 9-436-993 with the United States Copyright Office. See Ex. A.

68.    Defendants willfully infringed Plaintiff's Edge AI Copyright by copying the software and manufacturing, distributing, and maintaining the Accused Instrumentalities, through fraud, misrepresentation, and otherwise without authorization from Plaintiff, and making other infringing use of the work within the United States. As a result, Defendants are liable to Plaintiff for willful infringement under 17 U.S.C. § 501, et seq.

69.    Plaintiff has no adequate remedy at law for Defendants wrongful conduct in that: (1) Plaintiff's Edge AI Copyright is a unique and valuable property that has no readily determinable market value; (2) the infringement by Defendants constitutes interference with Plaintiff's goodwill and customer relations; and (3) Defendants' wrongful conduct and the damage resulting therefrom is continuing. Therefore, pursuant to 17 U.S.C. § 502, Plaintiff is entitled to injunctive relief to include stopping the manufacture, distribution, and maintenance of the Accused Instrumentalities, including cutting off consumer access to the same.

70.    Plaintiff has suffered, and continues to suffer, substantial and irreparable damage to its business reputation and goodwill. Pursuant to 17 U.S.C. § 504, Plaintiff is entitled to actual damages and profits, statutory damages, and damages for willful conduct.

71.    Plaintiff is also entitled to recover its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

## COUNT II – COPYRIGHT INFRINGEMENT
### (Reg. No. TX 9-436-666 - Teralink AI Platform software program)
### (17 U.S.C. §101 et. seq.)

72.    Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

73.    Plaintiff is the owner of the right, title, and interest in the Teralink AI Copyright registered as Reg. No. TX 9-436-666 with the United States Copyright Office. See Ex. B.

74.    Defendants willfully infringed Plaintiff's Teralink AI Copyright by copying the software and manufacturing, distributing, and maintaining the Accused Instrumentalities, through fraud, misrepresentation, and otherwise without authorization from Plaintiff, and making other infringing use of the work within the United States. As a result, Defendants are liable to Plaintiff for willful infringement under 17 U.S.C. § 501, et seq.

75.    Plaintiff has no adequate remedy at law for Defendants wrongful conduct in that: (1) Plaintiff's Teralink AI Copyright is a unique and valuable property that has no readily determinable market value; (2) the infringement by Defendants constitutes interference with Plaintiff's goodwill and customer relations; and (3) Defendants' wrongful conduct and the damage resulting therefrom is continuing. Therefore, pursuant to 17 U.S.C. § 502, Plaintiff is entitled to injunctive relief to include stopping the

manufacture, distribution, and maintenance of the Accused Instrumentalities, including cutting off consumer access to the same.

76.     Plaintiff has suffered, and continues to suffer, substantial and irreparable damage to its business reputation and goodwill. Pursuant to 17 U.S.C. § 504, Plaintiff is entitled to actual damages and profits, statutory damages, and damages for willful conduct.

77.     Plaintiff is also entitled to recover its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

### COUNT III – BREACH OF CONTRACT

78.     Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

79.     On or about January 5, 2024, Plaintiff and Defendants entered into an oral contract whereby in consideration of Defendants negotiating for and completing the acquisition of Plaintiff and Plaintiff's assets, Plaintiff provided Defendants with access to Plaintiff's AI Computer Programs and related camera products, transferred Plaintiff's personnel to Defendants, provided support and expertise to Defendants to implement Plaintiff's AI Computer Programs in Defendants' commercial products, and negotiated a buy-back of Plaintiff's investor interest with a loan from Defendant KV's Shanghai wholly-owned subsidiary to Jinjun Wang, all while Defendants completed due diligence and other actions related to the acquisition.

80.     Plaintiff has performed all conditions, covenants, and promises required to be performed on Plaintiff's part under the contract, namely, provided access to Plaintiff's AI Computer Programs, transferred Plaintiff's personnel to Defendants' employ, provided support and expertise to Defendants to implement Plaintiff's AI Computer Programs in Defendants' commercial products, and buying-back interest from Plaintiff's investor.

81.    Defendants breached the contract by failing to follow through on the due diligence and ultimate acquisition of Plaintiff and Plaintiff's assets, and related omissions.

82.    As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in an amount to be proven at trial.  In addition, Plaintiff, through Jinjun Wang has suffered consequential damages, in an amount to be proven, related to the loan Jinjun Wang was forced to take from Defendant KV's Shanghai wholly-owned subsidiary.

## COUNT IV – FRAUD AND MISREPRESENTATION

83.    Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

84.    Based on the foregoing allegations, Defendants made representations to Plaintiff regarding the proposed acquisition of Plaintiff's business and assets, the need for Defendants to use Plaintiff's AI Computer Programs and related camera products, the need to transfer Plaintiff's personnel to Defendants to provide support and expertise to Defendants, and the need for Plaintiff to buy-back interest from its investor, all during the negotiations and due diligence review related to the proposed acquisition.

85.    In particular, Defendants began negotiations with Plaintiff for acquisition of Plaintiff's business and assets.  Defendants represented that such negotiations would continue to completion if Plaintiff provided Defendants with access to the AI Computer Programs and employee support and expertise to use in Defendants' existing and planned commercial products prior to the acquisition.

86.    Defendants' representations were false when made.

87.    When making these false representations, Defendants knew they were false or made them recklessly and without regard for their truth.

88.    Defendants made these false representations with the intent to deceive Plaintiff and to induce Plaintiff to rely on them.

89.    Plaintiff reasonably relied on Defendants' false representations.  But for Defendants' false representations, Plaintiff would not have suffered the direct, proximate, and consequential damages alleged above.

90.    Plaintiff's reliance on Defendants' false representations was a substantial factor in causing harm to Plaintiff.

91.    As a direct and proximate result of Defendants' false representations and Plaintiff's reasonable reliance on them, Plaintiff has been damaged in an amount to be proven at trial.  In addition, Plaintiff, through Jinjun Wang has suffered consequential damages, in an amount to be proven, related to the loan Jinjun Wang was forced to take from Defendant KV's Shanghai wholly-owned subsidiary.

**COUNT V – FRAUD IN THE INDUCEMENT**

92.    Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

93.    On or about January 5, 2024, based on the foregoing allegations, Defendants made representations to Plaintiff regarding the proposed acquisition of Plaintiff's business and assets, the need for Defendants to use Plaintiff's AI Computer Programs and related camera products, the need to transfer Plaintiff's personnel to Defendants to provide support and expertise to Defendants, and the need for Plaintiff to buy-back interest from its investor, all during the negotiations and due diligence review related to the proposed acquisition.

94.    In particular, Defendants began negotiations with Plaintiff for acquisition of the business and assets.  In addition, Defendant represented that such negotiations would continue if Plaintiff provided Defendants with access to the AI Computer Programs and employee support to use in Defendants' existing and planned commercial products prior to the acquisition.

95.    These representations were material to the transaction between Plaintiff and Defendants.

96.    Defendants' representations were false when made.

97.    When making these false representations, Defendants knew they were false or made them recklessly and without regard for their truth.

98.    Defendants made these false representations with the intent to deceive Plaintiff and to induce Plaintiff to rely on them.

99.    Plaintiff reasonably relied on Defendants' false representations. But for Defendants' false representations, Plaintiff would not have suffered the direct, proximate, and consequential damages alleged above.

100.    Plaintiff's reliance on Defendants' false representations was a substantial factor in causing harm to Plaintiff.

101.    As a direct and proximate result of Defendants' false representations and Plaintiff's reasonable reliance on them, Plaintiff has been damaged in an amount to be proven at trial. In addition, Plaintiff, through Jinjun Wang has suffered consequential damages, in an amount to be proven, related to the loan Jinjun Wang was forced to take from Defendant KV's Shanghai wholly-owned subsidiary.

## COUNT VI – UNJUST ENRICHMENT

102.    Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

103.    Plaintiff conferred benefits on Defendants by providing Defendants with access to Plaintiff's AI Computer Programs and related camera products, transferring Plaintiff's personnel to Defendants, and providing support and expertise to Defendants to implement Plaintiff's AI Computer Programs in Defendants' commercial products, all while Defendants completed due diligence and other actions related to the proposed acquisition of Plaintiff's business and assets.

104.    These benefits took the form of access to Plaintiff's AI Computer Programs and trained employees for implementation and maintenance of the same in the production and distribution of Defendants' Accused Instrumentalities.

105.    Defendants knowingly accepted and retained the benefits.

106.    The circumstances are such that it would be inequitable for Defendants to retain the benefits without paying fair value for it.

107.    Defendants have been unjustly enriched at the expense of Plaintiff in an amount to be proven at trial.

## COUNT VII – CONVERSION

108.    Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

109.    Plaintiff owned and possessed specific AI Computer Programs and related camera products, including but not limited to the Edge AI Camera Software covered by the Edge AI Copyright and the Teralink AI Platform Software covered by the Teralink AI Copyright (collectively, "the Property").

110.    Defendants intentionally and substantially interfered with Plaintiffs' property by taking possession of and preventing or prohibiting access to and/or use of the Property by Plaintiff, namely, in the ordinary course of Plaintiff's past, present and future business.

111.    Plaintiff did not provide knowing or informed consent to Defendants' conduct based upon Defendants' wrongful conduct.

112.    Plaintiff was harmed by Defendants' conduct.

113.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

114.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been damaged in an amount to be proven at trial.

115.   Defendants' conduct was willful, wanton, malicious, and oppressive, justifying an award of punitive damages.

## COUNT VIII – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

116.   Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

117.   On or about January 5, 2024, Plaintiff and Defendants entered into an oral contract whereby in consideration of Defendants negotiating for and completing the acquisition of Plaintiff and Plaintiff's assets, Plaintiff provided Defendants with access to Plaintiff's AI Computer Programs and related camera products, transferred Plaintiff's personnel to Defendants, provided support and expertise to Defendants to implement Plaintiff's AI Computer Programs in Defendants' commercial products, and negotiated a buy-back of Plaintiff's investor interest with a loan from Defendant KV's Shanghai wholly-owned subsidiary to Jinjun Wang, all while Defendants completed due diligence and other actions related to the acquisition.

118.   Based on this oral contract, the parties understood that Plaintiff was to provide Defendants with access to Plaintiff's copyrighted software and related camera products, transfer Plaintiff's personnel to Defendants employ, and provide support and expertise to Defendants to implement Plaintiff's copyrighted software in Defendants' commercial products, while Defendants were to complete due diligence and other actions related to the acquisition of Plaintiff and Plaintiff's assets.

119.   The contract contained an implied covenant of good faith and fair dealing that neither party would do anything to unfairly interfere with the right of the other party to receive the benefits of the agreement.

120.   Plaintiff has performed all conditions, covenants, and promises required on Plaintiff's part under the contract.

121.    Defendants breached the implied covenant of good faith and fair dealing by unfairly interfering with Plaintiff's right to receive the benefits of the contract by failing to follow through on the due diligence and ultimate acquisition of Plaintiff and Plaintiff's assets, failing to maintain transferred employment of Plaintiff's personnel, and by hindering the development and distribution of Plaintiff's camera products that were transferred to Defendant KV as part of the contract.

122.    Defendants' conduct was not consistent with the parties' reasonable expectations at the time of contracting.

123.    As a direct and proximate result of Defendants' breach of the implied covenant, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT IX – UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §§ 17200, ET. SEQ.)

124.    Plaintiff incorporates by reference the allegations of paragraphs 1-64 of this Complaint as if fully set forth herein.

125.    Defendants acts of using and continuing to use Plaintiff's copyrighted software and other wrongful acts as alleged herein constitute unfair and unlawful business acts and practices under Business and Professions Code Section 17200, et seq., because such acts are forbidden by various state laws (including Cal. Civ. Code § 1428, Cal. Com. Code §§ 2602, 2605, 2607, 2609, 2610, 2611, and 2703) and are unscrupulous, unfair, and injurious to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SUZHOU LINKDOME TECHNOLOGY LTD. respectfully requests that this Court grant the following relief in its favor and against Defendants:

(a) A judgment according to proof in favor of Plaintiff for any actual, special and consequential damages incurred by Plaintiff as a result of Defendants' torts and breaches;

(b) An injunction preventing Defendants from engaging in similar misconduct in the future;

(c) An award of punitive damages as permitted by law;

(d) An award for all applicable prejudgment interest and post-judgment interest at the maximum legal rate;

(e) An award to Plaintiff of its reasonable attorneys' fees and costs, to the extent permitted by law;

(f) An award of such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands that the instant case be tried by a jury.


Dated: November 25, 2024          Respectfully submitted:

YK LAW, LLP


By: __/s/ Michael A DiNardo_____
       Michael A. DiNardo, Esq.
Aaron T. Borrowman, Esq.
YK LAW, LLP
445 S. Figueroa St, Suite 2280
Los Angeles, CA, 90071
Office: 213-401-0970

Attorneys for Plaintiff Suzhou Linkdome Technology Ltd.